**CUMBERLAND VALLEY RURAL ELEC-
TRIC COOPERATIVE CORPO-
RATION, Appellant,**

v.

**PUBLIC SERVICE COMMISSION of Ken-
tucky: City of Jellico, Tennessee, and Cal-
Glo Coal Company, Inc., Appellees.**

Court of Appeals of Kentucky.

Oct. 18, 1968.

Philip P. Ardery, Brown, Ardery, Todd & Dudley, Louisville, for appellant.

J. Gardner Ashcraft, Frankfort, for Public Service Commission of Kentucky.

Sutton & Forcht, Williamsburg, E. Gaines Davis, Jr., Smith, Reed, Yessin & Davis, Frankfort, for City of Jellico, Tennessee and Cal-Glo Coal Co., Inc.

CULLEN, Commissioner.

Cumberland Valley Rural Electric Cooperative Corporation filed a complaint with the Public Service Commission of Kentucky, against Jellico Tennessee Electric and Water System and Cal-Glo Coal Company, alleging that Jellico and Cal-Glo had illegally invaded the service area of Cumberland and had violated KRS 278.020 in constructing an electric transmission line without a certificate of convenience and necessity. The Public Service Commission dismissed the complaint, and upon appeal by Cumberland to the Franklin Circuit Court judgment was entered affirming the order of the commission. Cumberland has appealed here from that judgment.

On this appeal Cumberland argues only the two points that the construction of the transmission line by Jellico and Cal-Glo was illegal in the absence of a certificate of convenience and- necessity under KRS 278.020, and that the rendering of electric service by Jellico to Cal-Glo violates the TVA Act of 1959.

The City of Jellico, Tennessee, for many years has operated an electric system using TVA power. For more than 20 years prior to 1967 it had rendered service to Gatliff, Kentucky, under certificates of public convenience and necessity from the Kentucky Public Service Commission. Its service lines extended to a coal tipple located on a 15,000-acre boundary owned by the Gatliff Coal Company and the Gatliff Heirs. The tipple was near the southern end of the boundary. The service to the tipple was three-phase.

The Cumberland Co-op was rendering single-phase service in an area to the northeast of the Gatliff boundary, and one of its lines extended to within a few hundred feet of the boundary.

In 1967 the Gatliff interests leased an area in the northeast part of its boundary to Cal-Glo, for a proposed new mine. Cal-Glo then entered into arrangements with Jellico pursuant to which Cal-Glo, at its own expense, constructed a transmission line running from the new mine location to the tipple at Gatliff, Kentucky, a distance of 2.7 miles, on and through the Gatliff boundary. Jellico agreed to provide electric power at the point of connection with its lines, at the tipple, with the restriction that the service would be exclusively for the Cal-Glo mine and Cal-Glo could not sell power from the line to anyone else.

Cumberland argues that either Cal-Glo or Jellico was required to obtain a certificate of convenience and necessity for construction of the line from the tipple to the new mine, under KRS 278.020. That statute provides, in pertinent part, that no person shall begin the construction of any facility "for furnishing to the public" a utility service, "except ordinary extensions of existing systems in the usual course of business," unless the person has obtained a certificate of convenience and necessity.

■ If the line in question be considered Cal-Glo's line it is clear that Cal-Glo was not required to obtain a certificate, because it did not construct the line to serve the *public* and it does not intend to serve the public.

■ On the other hand, if the line be considered Jellico's line, through which Jellico is serving the public in the form of Cal-Glo as a consumer, we think it properly may be considered that the line is an ordinary extension of Jellico's existing system in the usual course of business. Jellico's existing system extended to and upon the Gatliff boundary. Under any normal circumstances, if a utility has been rendering service to a tract of land owned as a single boundary, extension of the service lines to any point in the boundary to serve an owner or tenant would reasonably be considered to be an ordinary extension in the usual course of business. It also would be reasonable to consider that the entire boundary is within the service area of the utility so long as it remains in one ownership. (The ownership serves as an area-defining factor.) The only complicating feature of the instant case arises from the fact that the tract is so large—15,000 acres. The Public Service Commission apparently was of the opinion that the size of the tract was not a basis for a distinction. Under KRS 278.430 the power of the courts to set aside an order of the Public Service Commission is limited to cases in which the court finds that the action of the commission was unreasonable or unlawful. We cannot say that the commissioner's determination in the instant case was unreasonable or unlawful.

■ The argument in this court that the rendering of service by Jellico to Cal-Glo violates the TVA Act of 1959 is not well taken, because no such allegation was made

by Cumberland in its complaint to the Public Service Commission. In substance, the argument is that the Gatliff tipple area was not an area in which Jellico was the "primary source of power supply" in 1957 within the meaning of Section 15d of the TVA Act, 16 U.S.C. § 831n–4. This involves a factual question which the Public Service Commission was not asked to determine. Cumberland says here, in its brief, that the TVA Board has made no formal declaration that the Gatliff area was one in which Jellico was the primary source of supply in 1957. We need not consider whether such a declaration is necessary under the TVA Act because the Public Service Commission was not asked to find that such a declaration was or was not made.

The judgment is affirmed.

All concur.